MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN, P.C.
MICHAEL J. FREED (*Pro Hac Vice*)
CAROL V. GILDEN (*Pro Hac Vice*)
CHRISTOPHER J. STUART
MICHAEL E. MOSKOVITZ (*Pro Hac Vice*)
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606-1615
Telephone: 312-521-2000
Facsimile: 312-521-2100
Lead Plaintiffs' Lead Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE VAN WAGONER FUNDS, INC. SECURITIES LITIGATION | MASTER FILE NO. C 02-03383 JSW |
| | **CLASS ACTION** |
| | **LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT** |
| This Document Relates to: | |
| ALL ACTIONS | Date:   June 17, 2005 |
| | Time:   9:00 a.m. |
| | Place:  Courtroom 2 |
| | Honorable Jeffrey S. White, |
| | United States District Judge |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    HISTORY OF THE LITIGATION ......................................................................2

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
SETTLEMENTS ..................................................................................................2

IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ....................4

    A.    The Stage of the Proceedings and the Strength of Plaintiffs' Case
        Supports Approval of the Settlement ...........................................................5

    B.    The Risk, Expense, Complexity, and Likely Duration of Further
        Litigation, and the Risk of Maintaining Class Action Status
        Throughout Trial Supports Approval of the Settlement ...............................6

        1.    The risks of proving liability and damages were substantial.............8

        2.    Van Wagoner Defendants cannot make a meaningful financial
            contribution to the Settlement ..............................................................9

        3.    Continued litigation would be long, complex and expensive ...........10

    C.    The Recommendations of Experienced Counsel Favor Approval of
        the Settlement ...........................................................................................11

    D.    Reaction of the Class Supports Approval of the Settlement ........................12

V.    CONCLUSION .................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540 (D. Colo. 1989) ...................................... 11

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) .............................................. 7

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ........................................................... 7

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ................................... 7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ....................................................... 4

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) ..................... 6, 11

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .......................................................... 12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ............................. 3, 4, 5, 11

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) ..................... 11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ........................................................................... 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 3, 4, 12

*In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH)
   ¶ 96,252 (N.D. Cal. 1991) ..................................................................................................... 7

*In re Convergent Tech. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991) .............................................. 7

*In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) ................................ 11

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......................... 3, 5, 12

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................. 3

*In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ...................... 12

*In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ............................................. 8

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) .................................. 6, 12

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994) ............................................ 7

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) ................................................................... 4

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) ........ 3, 4

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .............................................. 3

*McGonigle v. Combs*, 968 F.2d 810 (9th Cir. 1992) .................................................................. 7

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y 1984) .............................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..................2, 3, 4, 5, 10

*Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977) .....................................4

*Sherin v. Gould*, 679 F. Supp. 473 (E.D. Pa. 1987).................................................................11

*Silver v. H&R Block*, 105 F.3d 394 (8th Cir. 1997)....................................................................7

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).......................................2, 3, 10

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989)....................3

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .................................................3

*Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988)..................................................7

*West Virginia v. Chas Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ....................................7

**Statutes**

15 U.S.C. § 78u-4(f)(7)(A) ......................................................................................................12

**Other Authorities**

Manual for Complex Litigation § 30.42 (3d ed. 1995)................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs respectfully submit this memorandum of law, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in support of their application for final approval of the proposed settlement (the "Settlement") of the above-entitled action (the "Litigation").

## I.    INTRODUCTION

After approximately three-and-a-half years of litigation, including a mediation supervised by a retired judge and extensive meetings and telephone conferences between counsel, Plaintiffs and Settling Defendants[1] entered into a Stipulation that sets forth the terms of the Settlement, including numerous reporting and corporate reforms.

On March 30, 2005, the Court signed an Order Granting Motion for Preliminary Approval of Settlement, Certifying Class for Settlement Purposes Only and Providing for Notice to Class ("Preliminary Approval Order").  In the Preliminary Approval Order, the Court set June 17, 2005 as the final approval hearing date.  Moreover, pursuant to the Preliminary Approval Order, over 97,000 notices were mailed to potential class members and shareholders of record.[2]  *See* Declaration of Paul Mulholland ("Mulholland Decl."), at ¶ 7, filed concurrently herewith.  Finally, the approved Summary Notice appeared in the April 21 and 22, 2005 editions of *The Wall Street Journal*.  *Id.* at ¶ 5.

As discussed more fully below, the Settlement, which provides for a substantial recovery in the face of the risks of litigation, is fair, reasonable and adequate, and meets all the relevant approval criteria.  Moreover, the fairness and adequacy of the Settlement is evidenced

---

[1] The "Settling Defendants" refer to UMB Fund Services Inc. and the Van Wagoner Defendants, who are collectively referred to as: Van Wagoner Funds, Inc. ("VW Funds"), Van Wagoner Capital Management, Inc. ("VWCM"), Garrett R. Van Wagoner, Larry P. Arnold, Robert S. Colman, Peter R. Kris, Van Wagoner Emerging Growth Fund, Van Wagoner Technology Fund, Van Wagoner Mid Cap Growth Fund, Van Wagoner Post Venture Fund and Van Wagoner Micro Cap Growth Fund.

[2] The Class is defined as "all persons or entities who purchased shares of the Van Wagoner Emerging Growth Fund, the Van Wagoner Technology Fund, the Van Wagoner Mid-Cap Growth Fund, the Van Wagoner Post-Venture Fund and the Van Wagoner Micro-Cap Growth Fund, issued by the Van Wagoner Funds during the period from February 28, 2000 through August 21, 2001."

by the fact that in response to a nationally published summary notice, and over ninety-seven thousand notices directly mailed to potential Class Members and shareholders of record, *not a single objection* has been either received by Plaintiffs' counsel or filed with the Court. Moreover, Plaintiffs' counsel has only received approximately 30 requests for exclusion (less than .030% of all notices sent).  The absence of any objections, and the minimal number of requests for exclusion, is significant since the Class undoubtedly includes, in addition to thousands of individuals, many sophisticated financial institutions that have counsel available to advise, represent and assist them in expressing opposition to the Settlement or request for attorney's fees[3] – if they so chose.  Accordingly, Lead Plaintiffs respectfully submit that the Court should approve the Settlement.

## II.      HISTORY OF THE LITIGATION

For a detailed description of the history of the Litigation, including the motion practice and settlement negotiations, resulting in the Settlement, Plaintiffs refer the Court to the Notice of Motion and Motion for Preliminary Approval of Settlement by Lead Plaintiffs; Memorandum of Points and Authorities in Support, filed on November 23, 2004; and Declaration of Jay C. Gandhi in Response to Court's Order of February 25, 2005 and in Support of Motion for Preliminary Approval of Settlement, filed March 14, 2005.

## III.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this

---

[3] On March 14, 2005, Lead Plaintiffs' counsel filed their Application for Attorneys' Fees and Reimbursement of Expenses, which the Court considered during the March 25, 2005 preliminary approval hearing.

is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, adequate and reasonable." *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  The Ninth Circuit has identified factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). Accord *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

The district court must exercise "sound discretion" in approving a settlement.  *Torrisi*, 8 F.3d at 1375; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  However, where, as here, a proposed class settlement has been reached after arm's-length negotiation conducted by capable counsel, it is presumptively fair. *See M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as

a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. *See also Hanlon*, 150 F.3d at 1026. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner.

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original).

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations conducted by capable counsel who are well experienced in securities litigation. *M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); Manual for Complex Litigation § 30.42 (3d ed. 1995). Here, it is the considered judgment of experienced counsel that the Settlement is fair, reasonable and adequate. And as demonstrated below, application of these criteria demonstrates that the Settlement warrants the Court's approval.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation, the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery. *Hanlon*, 150 F.3d at 1026; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 616-17. In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*,

73 F.R.D. 658 (S.D.N.Y. 1977).  A balance of these factors in this case supports approval of the Settlement.

   **A.     The Stage of the Proceedings and the Strength of Plaintiffs' Case Supports Approval of the Settlement**

   As noted above, factors to be considered in approving a settlement include the stage of the proceedings and the strength of plaintiffs' case.  *See Officers for Justice*, 688 F.2d at 625; *Ellis*, 87 F.R.D. at 18.   However, "'[i]n the context of class action settlement, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'"  *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alask P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

   In this instance, before reaching the Settlement with Settling Defendants, Plaintiffs' counsel made a thorough and detailed investigation into the facts underlying the claims made and the applicable legal principles concerning those claims.  Plaintiffs' counsel accomplished their investigation despite formal discovery being effectively stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").   For example, before filing their Amended Consolidated Complaint and the Second Amended Consolidated Complaint, Lead Plaintiffs engaged the services of investigators, an accounting expert and financial analysts to review and advise on the damages, causation, and the merits of the asserted claims; analyzed scores of public documents, including, but not limited to, the defendants' public filings, the companies in which the Van Wagoner Funds purchased restricted securities, the administrative orders filed by the Securities and Exchange Commission ("SEC") and the settlements reached with the SEC by certain of the Van Wagoner Defendants, press releases and news articles; researched information relating to the capital markets and the mutual fund industry; and conducted various interviews.

   Based on these substantial efforts, Plaintiffs were able to file highly detailed complaints.  Moreover, Plaintiffs' counsel engaged in a thorough analysis of the applicable law

1    with respect to the claims asserted in the complaints and the potential defenses thereto which

2    required conferring with consultants and experts throughout the Litigation.

3            In filing their Second Amended Consolidated Complaint, Lead Plaintiffs believe that

4    they have adequately pled causes of action under the Securities Act.   Nevertheless, Lead

5    Plaintiffs are not guaranteed that their claims will survive another round of motions to dismiss

6    or that they will ultimately be able to prove Settling Defendants' liability.   Additionally,

7    Settling Defendants have made it abundantly clear that, absent a settlement, they will

8    vigorously contest class certification.   While Plaintiffs believe that this case is ideal for class

9    resolution, there is a real risk that class certification could be denied.   Such a result could be

10   fatal because individual claims would be too small to litigate.

11           Consequently, Plaintiffs' counsel believe that the action reached a stage where "the

12   parties certainly [had] a clear view of the strengths and weaknesses of their cases."   *In re*

13   *Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir.

14   1986).   Additionally, only after Plaintiffs' counsel demonstrated their commitment, willingness

15   and ability to prosecute this case vigorously, were Settling Defendants persuaded to adopt

16   numerous reporting and corporate reforms.   There was no collusion in conjunction with either

17   the Litigation or the bargaining that culminated in the Settlement.   The proposed Settlement

18   was reached after arm's-length negotiations conducted over a period of time.   Therefore, the

19   Court should find that these factors weigh in favor of approving the Settlement.

20   **B.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation,
             and the Risk of Maintaining Class Action Status Throughout Trial
21           Supports Approval of the Settlement**

22           The risk, expense, complexity, and likely duration of further litigation, as well as the

23   risk of maintaining class action status throughout trial, are also factors that should be analyzed

24   in the context of approving a class action settlement.   *Chatelain v. Prudential-Bache Sec., Inc.*,

25   805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted).   Of course, Plaintiffs believe that

26   their claims have merit, and Plaintiffs would not have initiated the Litigation had they believed

27   otherwise.   However, Plaintiff's counsel's experience is consistent with that of courts and

28   litigants everywhere who recognize that litigation success can never be deemed a certainty.

1   *See West Virginia v. Chas Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("no matter

2   how confident one may be of the outcome of litigation, such confidence is often misplaced"),

3   *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

4          Although Plaintiffs believe that their case is meritorious and that they would ultimately

5   prevail in establishing liability and damages, their counsel's experience has taught them how

6   the above-mentioned factors can make the outcome of a trial extremely uncertain.  Moreover,

7   even if Plaintiffs were to prevail at trial, risks to the Class remain.  Surviving a motion to

8   dismiss is no guarantee of recovery, as appellate decisions affirming summary judgment and

9   directed verdicts for defendants show. *See, e.g., Silver v. H&R Block*, 105 F.3d 394 (8th Cir.

10  1997); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994); *McGonigle v. Combs*,

11  968 F.2d 810 (9th Cir. 1992); *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507 (9th Cir. 1991).

12         Even succeeding at trial does not eliminate the risk.  For example, in *In re Apple

13  Computer Sec. Litig.*, [1991 *Transfer* Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,252 (N.D. Cal.

14  1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based upon the jury's

15  findings, recoverable damages could have exceeded $100 million.  However, weeks later, the

16  court overturned the verdict, entered judgment n.o.v. for the individual defendants and ordered

17  a new trial with respect to the corporate defendant.  In another case, the class won a jury verdict

18  and a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and the case

19  dismissed. *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).  *See also Anixter v. Home-

20  Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after

21  two decades of litigation); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988)

22  (reversing plaintiffs' jury verdict for securities fraud); *West Virginia,* 314 F. Supp. at 743-44

23  ("It is known from past experience that no matter how confident one may be of the outcome of

24  litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey

25  Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million

26  judgment after trial).

27         If Plaintiffs were to succeed at every step, recovery is still not assured because the

28  parties have to consider the extent to which the defendants would be able to withstand a larger

judgment.  Had the litigation continued and resulted in a significantly greater judgment, the financial impact on Settling Defendants would have been severe and the likelihood that Plaintiffs would collect on such a judgment would have been highly problematic at best.

Thus, in evaluating the fairness of the Settlement, the Court should recognize these inherent risks and the uncertainty surrounding this type of Litigation.  As discussed more fully below, Plaintiffs, in their Amended Consolidated Complaint, faced particularly difficult obstacles in pleading a case that would withstand the heightened pleading standards set forth by the PSLRA, as interpreted by the Ninth Circuit in *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974-782 (9th Cir. 1999).  Add to that such factors as: (i) fact-based defenses raised by defendants; (ii) the substantial risk that Plaintiffs might not prevail at the motion-to-dismiss stage, summary judgment or trial; and (iii) serious questions of law and fact in complex actions such as this which place the ultimate outcome of the Litigation in doubt, it becomes clear that the Court is well within its discretion in finding that the Settlement is a fair and reasonable compromise and in the best interest of Plaintiffs and the Class.

1.      **The risks of proving liability and damages were substantial**

In assessing settlement, Plaintiffs counter-balanced the probability of ultimate success on the merits with the risks of establishing liability and damages.  Although Plaintiffs believe that their case is strong – and negotiated the Settlement on that basis – Settling Defendants nevertheless held a number of potentially effective defenses.  Throughout the Litigation, Settling Defendants contested, and expressed an intention of continuing to contest, virtually every aspect of Plaintiffs' claims, including liability, damages and loss causation.  Settling Defendants are represented by highly experienced and competent counsel, who undoubtedly would continue to mount a zealous and no-holds-barred defense.

From its inception, this case has been vigorously prosecuted and defended, presenting a significant possibility that Plaintiffs and the Class would obtain no recovery whatsoever. Moreover, Settling Defendants successfully argued to the Court that Lead Plaintiffs, in their Amended Consolidated Complaint, did not sufficiently plead causes of action under the Securities Act, the Securities Exchange Act of 1934 and the Investment Company Act of 1940,

and have continued to maintain that they did not violate any securities laws.  While the Court did allow Lead Plaintiffs to re-plead their Securities Act and Exchange Act claims, the Court dismissed Lead Plaintiffs' Investment Company Act claims with prejudice.

In filing their Second Amended Consolidated Complaint, Lead Plaintiffs believe that they have adequately pled causes of action under the Securities Act.  Nevertheless, if the case against Settling Defendants proceeded, they would likely raise arguments similar to those raised by non-settling defendant Ernst & Young LLP ("E&Y") in its motion to dismiss.  Specifically, Lead Plaintiffs would likely challenge the pleading standard under which Plaintiffs' Securities Act claims should be analyzed, arguing that the heightened pleading standards under Federal Rule of Civil Procedure 9(b), usually reserved for fraud claims under the Securities Exchange Act of 1934, should be applied.

As they successfully argued before the Court in support of their motion to dismiss the Amended Consolidated Complaint, Settling Defendants would likely argue that Plaintiffs have not sufficiently alleged that any material misrepresentations were made.  Moreover, it can be expected that Settling Defendants would contend that Plaintiffs have not adequately alleged loss causation.

Accordingly, if Plaintiffs' case against the Settling Defendants were to continue, Plaintiffs would face numerous litigation risks.  Even if Plaintiffs would be able to overcome these arguments, as well as additional defenses, there is no guarantee that Plaintiffs would ever receive a favorable verdict or be able to collect a judgment against the Settling Defendants.

### 2. Van Wagoner Defendants cannot make a meaningful financial contribution to the Settlement

Around the September 4, 2003 mediation, Lead Plaintiffs learned that the Van Wagoner Defendants were insured under a "wasting" insurance policy and that a majority of the insurance proceeds had been spent.  Since then, all available insurance proceeds under the policy have been depleted.

When settlement discussions between Lead Counsel and counsel for the Van Wagoner Defendants began in earnest, Van Wagoner Defendants' counsel made it clear that the Van

Wagoner Defendants would not be able to make a meaningful financial contribution to the settlement.  Consequently, Lead Plaintiffs predicated any settlement upon a searching analysis of Garrett Van Wagoner's (including his wife) and VWCM's ability to fund a settlement.  To that end, Van Wagoner Defendants produced and Lead Counsel analyzed voluminous financial representations, including, but not limited to, personal and corporate tax returns, real estate taxes, mortgage documentation, investments, collectibles, furnishings, artwork and additional documents related to additional assets and liabilities.  Lead Counsel also required Van Wagoner Defendants' counsel to make Garrett Van Wagoner and a VWCM representative available for an unrestricted interview.  Van Wagoner Defendants' counsel agreed, and Lead Counsel interviewed Garrett Van Wagoner and William Minor (VWCM's representative and Garrett Van Wagoner's personal accountant) regarding Garrett Van Wagoner's and VWCM's financial condition.  After analyzing the financial representations and discussing the same with Garrett Van Wagoner and William Minor, Lead Counsel were satisfied that the Van Wagoner Defendants were not in a position to make a meaningful financial contribution to the settlement.

Consequently, if the litigation against the Settling Defendants were to proceed, it is unlikely that Plaintiffs would be able to recover substantial monies.  Balancing the uncertainty of continued litigation and the financial condition of the Van Wagoner Defendants against the series of Corporate Governance Changes to which the Van Wagoner Defendants' agreed, Plaintiffs believe that the Settlement is fair, reasonable and adequate.

### 3.     Continued litigation would be long, complex and expensive

Courts have consistently recognized that the expense and possible lengthy duration of the litigation are critical factors in evaluating the reasonableness of the settlement.  *Torrisi*, 8 F.3d at 1376 ("The cost, complexity and time of fully litigating the case all suggest that this settlement was fair."); *Officers for Justice*, 688 F.2d at 626 (expense and possible duration of litigation are major factors to be considered in evaluating reasonableness of settlement).

Here, continued litigation would have greatly increased the expense and duration of the case.  Complicated factual scenarios and legal defenses, coupled with a lengthy trial and the

1    possibility of interlocutory and other appeals, could have immeasurably delayed the case.

2    Instead, by reaching a fair, reasonable and adequate Settlement, Plaintiffs have eliminated the

3    substantial risk of continued litigation under circumstances where a favorable outcome could

4    not be assured.

5    **C.    The Recommendations of Experienced Counsel Favor Approval of the**
         **Settlement**

6

7         The experience and views of plaintiffs' counsel is another factor to be analyzed in

8    approving a settlement.  *See Chatelain*, 805 F. Supp. at 212 ("A substantial factor in

9    determining the fairness of the settlement is the opinion of counsel involved in the settlement");

10   *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("The views and

11   experience of counsel are legitimate factors to consider"); *Sherin v. Gould*, 679 F. Supp. 473,

12   475 (E.D. Pa. 1987) ("the parties and counsel are typically in the best position to evaluate the

13   settlement, and their judgments are entitled to considerable weight").  Moreover, "[c]ourts have

14   consistently refused to substitute their business judgment for that of counsel, absent evidence of

15   fraud or overreaching."  *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo.

16   1976).

17        This case has been litigated by experienced and competent counsel.  Defense counsel

18   are from firms with an abundance of experience in this type of litigation.  Plaintiffs' counsel

19   have had many years of experience in litigating securities fraud actions, and in assessing the

20   relevant merits of each side's case.  The Settlement was aggressively negotiated by both sides.

21        Thus, experienced counsel, negotiating at arm's length, have weighed the above factors

22   in the context of this case and recommended the Settlement.  As courts have stated, the view of

23   the attorneys actively conducting the litigation, while not conclusive, "is entitled to significant

24   weight."  *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985);

25   *Ellis*, 87 F.R.D. at 18 ("fact that experienced counsel involved in the case approved the

26   settlement after hard-fought negotiations is entitled to considerable weight").  That qualified

27   and well-informed counsel, operating at arm's length, endorse the Settlement as being fair,

28   reasonable and adequate to the Class favors this Court's approval of the Settlement.

D.       Reaction of the Class Supports Approval of the Settlement

Notice of the Settlement was sent to over 97,000 potential Members of the Class and summary notice was published on April 21 and April 22, 2005 in *The Wall Street Journal*. *See* Mulholland Decl. at ¶¶ 5, 7. The time period for objecting to the Settlement expired on May 6, 2005. No objections have been received to the Settlement.[4] The absence of objection by a Class Member to the proposed settlement is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement and supports approval of the Settlement. *See, e.g., Hanlon*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least same objective positive commentary as to its fairness"); *Mego Financial Corp.*, 213 F.3d at 459; *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746; *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (lack of objections evidences the fairness of the settlement). The Court should, therefore, conclude that this factor militates in favor of the Settlement.

---

[4] On May 6, E&Y filed Ernst & Young LLP's Opposition to Final Approval of Settlement. E&Y re-asserted two objections that the Court rejected in its Preliminary Approval Order. The first was that the Stipulation does not provide E&Y with a sufficient contribution bar. The Court overruled E&Y's objection and granted preliminary approval, provided that the final settlement is limited to the express wording of 15 U.S.C. § 78u-4(f)(7)(A) of the PSLRA. *See* Preliminary Approval Order at ¶ 2. Accordingly, Plaintiffs and Settling Defendants have revised the [Proposed] Final Judgment and Order. *See* Revised [Proposed] Final Judgment and Order at ¶ 8, attached as Ex. A. The second objection was that the Settlement violated the PSLRA's discovery stay provision. The Court rejected E&Y's argument: "The Court finds that the disputed provision which affords Plaintiffs reasonable access to documents in their possession including materials and testimony provided to the Securities and Exchange Commission does not violate the discovery stay provision of the PSLRA." Preliminary Approval Order at ¶ 2. Moreover, in accordance with the Settlement, the Van Wagoner Defendants already provided Plaintiffs with documents. Consequently, E&Y's objection is moot.

**V.      CONCLUSION**

Plaintiffs submit that, for the foregoing reasons, the Settlement is fair, reasonable and adequate, and should be approved by the Court.

Dated: May 20, 2005

Respectfully submitted,

Michael J. Freed
Carol V. Gilden
Christopher J. Stuart
Michael E. Moskovitz
MUCH SHELIST FREED DENENBERG
 AMENT & RUBENSTEIN, P.C.


/s/      Carol V. Gilden
                Carol V. Gilden

Attorneys for Lead Plaintiffs

# EXHIBIT A

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re VAN WAGONER FUNDS, INC. SECURITIES LITIGATION | Master Case No. 02-C-03383 JSW |
| | CLASS ACTION |
| This Document Relates To: | REVISED [PROPOSED] FINAL JUDGMENT AND ORDER |
| ALL ACTIONS. | Judge:      Hon. Jeffrey S. White<br>Courtroom: 2<br>Date:        N/A<br>Time:        N/A |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **FINAL JUDGMENT AND ORDER**

This matter came before the Court for hearing on _____ pursuant to the Order of this Court, on the application of the parties for approval of the settlement set forth in the Stipulation of Settlement dated as of _____ (the "Stipulation").  Due and adequate Notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1.     This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.     This Court has jurisdiction over the subject matter of the Consolidated Securities Action and over all parties to the Consolidated Securities Action, including all Members of the Class.

3.      "Class" and "Class Members" means Plaintiffs and all other persons and entities, and their successors in interest and transferees, direct or indirect, immediate or remote, who purchased any shares of Van Wagoner Emerging Growth Fund, Van Wagoner Technology Fund, Van Wagoner Mid Cap Growth Fund, Van Wagoner Post Venture Fund, and/or Van Wagoner Micro Cap Growth Fund, or any of their predecessor or successor funds, issued by Van Wagoner Funds during the period from February 28, 2000 through August 21, 2001. Excluded from the Class are Settling Defendants; members of the families of each individual defendant; any entity in which any defendant has a majority-owned interest; officers and directors of Settling Defendants and their majority-owned subsidiaries and affiliates; and the legal representatives, heirs, successors, or

assigns of any such excluded party. Also excluded from the Class are any putative Class Members who excluded themselves by filing a request for exclusion in accordance with the procedures set forth in the Court's Order Preliminarily Approving Settlement and Providing For Notice.

4.     Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the settlement set forth in the Stipulation and finds that said settlement was entered into in good faith and is, in all respects, fair, reasonable and adequate to the Class.

5.     Except as to any individual claim of those persons who have validly and timely requested exclusion from the Class, the Consolidated Securities Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice as to the Lead Plaintiffs and the other Members of the Class, as against each and all of the Released Persons. The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

6.     The Court finds that the Stipulation and settlement were entered into in good faith and are fair, reasonable and adequate as to the Class, and that the Stipulation and settlement are hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

7.     Upon the Effective Date hereof, Plaintiffs do and each of the Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall forever be barred and enjoined from prosecuting, any and all Released Claims and Unknown Claims, including any and all claims, demands, rights, liabilities, and causes of actions of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, known or unknown, asserted or that might have been asserted, including, without limitation, claims for fraud, negligent misrepresentation, or

violations of any state or federal statutes or regulations by Plaintiffs or any Class Member, on behalf of themselves, their heirs, executors, administrators, successors, and assigns against Settling Defendants or the Released Persons or any of them arising out of, relating to, or in connection in any way with (i) the Securities Action, the Consolidated Securities Action, and the Complaint; (ii) all the claims that have been or could have been asserted or raised in the Derivative Action; (iii) all the claims that could have been raised relating to or arising out of the SEC Settlement; or (iv) all the claims relating in any way to the liquidity, pricing, valuations, investments in or sales of private equity securities by Settling Defendants or the Released Persons, but excluding those claims that have been or could be asserted by the Plaintiffs against Ernst & Young.

8.   Pursuant to 15 U.S.C. Section 78u-4(f)(7)(A), the Settling Defendants and Released Persons are hereby discharged of all obligations to the Class.  The Settling Defendants and Released Persons shall be discharged from all claims for contribution arising out of this action (i) by any person against the Settling Defendants or Released Persons; and (ii) by the Settling Defendants or Released Persons against any person, other than a person whose liability has been extinguished by the settlement of the Settling Defendants or Released Persons.

9.   Each of the releases set forth or referred to in the Stipulation shall be and is hereby deemed to be in effect as of the Effective Date of the Stipulation.

10.   The Notice of Pendency and Proposed Settlement of Class Action given to the Class was the best notice practicable under the circumstances, including the individual notice to all Class Members who could be identified through reasonable effort.  Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed settlement set forth in the Stipulation, to all Persons

entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

11.     Any order entered regarding the attorneys' fees application shall in no way disturb or affect this Final Judgment and shall be considered separate from this Final Judgment.

12.     Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement shall be construed or may be deemed to be evidence of or an admission or concession on the part of any Setting Defendant with respect to any claim or any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the contentions and defenses that Settling Defendants have asserted.

13.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement; (b) hearing and determining applications for attorneys' fees, interest and expenses in the Consolidated Securities Action; and (c) all parties hereto for the purpose of construing, enforcing and administering the Stipulation.

14.     The Court finds that during the course of the Consolidated Securities Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

15.     In the event that the settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to Settling Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation; and in such

event, the Settling Parties shall revert to their litigation positions as of November 10, 2004.

**IT IS SO ORDERED**.

Dated: _____

THE HONORABLE JEFFREY S. WHITE

United States District Court Judge

Respectfully Submitted By
PETER M. STONE
JAY C. GANDHI
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Seventeenth Floor
695 Town Center Drive
Costa Mesa, CA  92626-1924
Telephone: (714) 668-6200
Facsimile: (714) 979-1921

Attorneys for Defendants
Van Wagoner Funds, Inc., Van Wagoner Capital Management, Inc., Garrett R. Van Wagoner,

Larry P. Arnold, Robert S. Colman and Peter R. Kris